UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

JOHN C.,[1]

                                          Plaintiff,                Case # 20-CV-099-FPG

v.                                                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
─────────────────────────────────────

**INTRODUCTION**

Plaintiff John C. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on or about April 14, 2016, alleging disability beginning January 31, 2014. Tr.[2] 68, 150-51. After the Social Security Administration ("SSA") denied his claim, Tr. 84-92, Plaintiff appeared, with counsel, at a hearing on September 26, 2018, before Administrative Law Judge Maria Herrero-Jaarsma (the "ALJ"). Tr. 32-67. On November 7, 2018, the ALJ issued an unfavorable decision. Tr. 15-26. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-8. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 9. Plaintiff filed a reply. ECF No. 10. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

**LEGAL STANDARD**

I.  **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II. **Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in gainful activity since January 31, 2014, the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar intervertebral disc displacement with radiculopathy; major depressive disorder; and anxiety.  Tr. 18.  The ALJ determined that Plaintiff's obstructive sleep apnea, gastroesophageal reflux disease, and insomnia were non-severe.  Tr. 18.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 18-20.  Next, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) within additional exertional limitations. The ALJ also determined that Plaintiff could work in a low stress environment—"meaning one with no supervisory responsibilities; no work at production rate pace; no fast-moving assembly line-type work and does not involve frequent changes in work routines or settings."  Tr. 20. Furthermore, Plaintiff would be able to understand, carry out, and remember simple, routine, and repetitive tasks.  Tr. 20.  His work could not involve traveling in unfamiliar places, but could include frequent contact with supervisors and co-workers, and occasional contact with the public. Tr. 20.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work.  Tr. 24.  At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform—such as a mailroom clerk, electronic worker, and hand packager—and therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 24-25.

**II.     Analysis**

Plaintiff argues that (1) the ALJ failed to give good reasons for discounting the opinions of Plaintiff's treating mental health provider, John Gillick, Ph.D.; (2) the ALJ failed to evaluate—or even acknowledge—two opinions from Dr. Gillick; (3) the ALJ's decision of other opinion evidence was unsupported by any rational relationship to the evidence; and (4) the frequency of Plaintiff's medical treatment during the relevant period would have rendered him unable to maintain the minimum standards of attendance. ECF No. 8-1 at 22-30. The Court agrees with Plaintiff's first argument and therefore declines to address the remaining arguments.

Under the regulations applicable at the time Plaintiff's application was filed, an ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of

expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927(c)(1)-(6).

Dr. Gillick, Plaintiff's treating psychologist, rendered four opinions, only two of which the ALJ discussed in her decision, giving both "partial weight." Dr. Gillick rendered his first opinion on October 3, 2016, noting that, Plaintiff "seldom engages in social activities" and will often "seclude himself in his bedroom for essentially the whole day." Tr. 469. Dr. Gillick identified that Plaintiff's physical issues prevented him from functioning the way he used to, causing him to feel "great shame." Tr. 470. "Given his preference for social isolation and the irritability that accompanies his depression and chronic pain," Dr. Gillick opined that Plaintiff would be unable to "function well in a setting which required significant contact with the public or working a team setting." Tr. 469.

In his second opinion, rendered on September 11, 2018, Dr. Gillick translated some of his previous findings into functional limitations. Dr. Gillick opined that Plaintiff would have a fair[4] ability to remember work-like procedures, sustain an ordinary routine without special supervision, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in a routine work setting. Tr. 1035-37. According to Dr. Gillick, Plaintiff would have a poor or no[5] ability to maintain attention for extended periods of two-hour segments, complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number of breaks. Tr. 1036. Dr. Gillick explained that Plaintiff's limitations derive from his "diminished concentration

---

[4] For purposes of the opinion, "fair" is defined as a "[s]ubstantial loss of ability to perform the named activity in regular, competitive employment and, at best, could do so only in a sheltered work setting where special considerations and attention are provided." Tr. 1035.

[5] For purposes of the opinion, "poor/none" is defined as "[c]omplete loss of ability to perform the named activity in regular, competitive employment <u>and</u> in a sheltered work setting; could do so only to meet basic needs at home." Tr. 1035 (emphasis in original).

and short-term memory problems secondary to his depression." Tr. 1037. He cautioned that Plaintiff has good verbal skills and above-average intelligence, so he "presents as less impaired than he is." Tr. 1037. Further complicating Plaintiff's condition, Dr. Gillick noted that "[w]hen his depression worsens, he isolates himself in his bedroom, making reliable attendance problematic." Tr. 1037.

The ALJ assigned "partial weight" to these two opinions, acknowledging that Dr. Gillick "has a longitudinal history treating" Plaintiff and that "some of the opinions are consistent with the record," but that "some of the other limitations in the report are not consistent with the medical evidence of record." The ALJ also acknowledged that "not all of the limitations that flow from the diagnoses are consistent with the evidence in the file." Tr. 23. Specifically, the ALJ maintained that Plaintiff's "ability to maintain attention and concentration appear to be overstated especially when comparing these limitations with the progress notes in the record and claimant's own testimony," and that "he would be able to follow simple spoke and written instructions given to him." Tr. 23.

The ALJ's decision to assign only partial weight to Dr. Gillick's opinions is not supported by substantial evidence. The crux of the ALJ's rationale is that Dr. Gillick's opinions regarding Plaintiff's ability to maintain concentration and a regular work schedule are not supported by Dr. Gillick's own progress notes and Plaintiff's own testimony. But the ALJ's decision fails to acknowledge Dr. Gillick's assessment—based on his long, intimate knowledge of Plaintiff—that Plaintiff appears less impaired than he actually is because of his intelligence. Moreover, the ALJ's reasoning is based on a flawed and narrow reading of the record that focuses disproportionately on Plaintiff's abilities during the rare occasions when his depression is managed, rather than the more frequent occasions when his depression and anxiety is not. In other words, the ALJ's RFC

6

here is not "the most [Plaintiff] can do despite [his] limitations," 20 C.F.R. § 404.1545(a), but the most he can do on the few days when he is at his best. This is not the standard.

Contrary to the ALJ's findings, Plaintiff's testimony is actually *consistent* with Dr. Gillick's opinions that Plaintiff would have significant limitations in maintaining attention and a normal workday and workweek. While it is true that Plaintiff testified that he would be able to follow simple and written and spoken instructions, Tr. 49, Plaintiff also testified that he does not get out of bed four to five days per month. Tr. 55. During those times, he is unable to sleep and has acutely diminished attention and concentration and in unable to recall events that just occurred. Tr. 59. When he is depressed and has not slept, Plaintiff "literally can't focus." Tr. 49. Plaintiff also testified that he does not typically leave his house and that he is triggered by being around people. Tr. 53-54. At his worst, he feels like a person who is "hopeless, suicidal at times, worthless." Tr. 46. He admitted that he is irritable and cries a lot. Tr. 47-48. He suffers from anxiety attacks that can last hours or days, in which he feels anxious, "jittery, zero focus. Feel like I'm going crazy." Tr. 47.

Again, contrary to the ALJ's assertion otherwise, Dr. Gillick's treatment notes are also *consistent* with his opinions regarding Plaintiff's functioning. Dr. Gillick treated Plaintiff for various mental health issues over the course of at least four years. Although Plaintiff occasionally reported improvements, Tr. 451-53, most of Dr. Gillick's treatment records detail Plaintiff's debilitating mental health impairments and significantly curtailed functioning. For example, Plaintiff repeatedly reported passive suicidal ideation, hoping, at various times over the course of four years, that he was murdered by someone else. Tr. 447, 448, 454, 456, 1027, 1031, 1032. Plaintiff repeatedly reported variable mood, Tr. 454, along with agitation and anxiety, Tr. 453, 455. From 2014 to 2018, Plaintiff regularly reported poor sleep, insomnia, and fatigue. Tr. 453,

7

456, 457, 1026. On August 13, 20218, Plaintiff told Dr. Gillick that he did not sleep for three straight days. Tr. 1033. Plaintiff's depression, anxiety, and shame contributed to his avoidance of social contact and seclusion, at times isolating in his bedroom for up to 22 hours per day. Tr. 450, 457, 1026, 1031. In 2016, Plaintiff detailed to Dr. Gillick that all of this had made Plaintiff less attentive to detail and caused his "memory and concentration" to be impaired. Tr. 456. Each of these treatment notes is consistent with Dr. Gillick's findings that Plaintiff would have a diminished capacity to work a regular schedule—due to periods of isolation—and memory and concentration issues—due to lack of sleep and fatigue.

In addition, the ALJ failed to acknowledge—let alone evaluate—two other opinions from Dr. Gillick, both of which support the limitations contained in his other opinions. An ALJ must evaluate every medical opinion it receives. 20 C.F.R. § 404.1527(c). On February 20, 2016, Dr. Gillick issued a medical report for the New York State Teachers' Retirement System that recounted Plaintiff's struggles with depression and anxiety and concluded—despite some of Plaintiff's progress—that "I feel that his depression and anxiety will continue to be disabling in both the immediate and distant future." Tr. 814. Similarly, on September 15, 2017, Dr. Gillick sent a letter indicating that while Plaintiff's "psychological condition is generally stable, . . . his depressive symptomology does worsen intermittently" at least in part because he is unable "to return to work without limitations." Tr. 667. The ALJ's failure to evaluate these opinions is particularly troubling because they support the opinions from Dr. Gillick that the ALJ did address.

The ALJ's errors are not harmless. The vocational expert testified that competitive employment would be ruled out if Plaintiff was absent for two days or more per month, Tr. 65, while the record demonstrates that Plaintiff is unable to leave his bedroom four to five times per month, Tr. 55, 450. The ALJ did not account for any absences in her RFC.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings, ECF No. 8, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 9, is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 19, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York